UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID WASH, ZODIAC INSURANCE SERVICES, INC., and ZODIAC INSURANCE SERVICES, INC., derivatively on behalf of ZODIAC INSURANCE SERVICES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT FINCH, individually and in his capacity as a Director of Zodiac Insurance Services, LLC, as a Director of AFL Insurance Brokers Limited, as a Director of AFL USA, Inc., as a director of AFLIB2 Ltd., and as a Director of Next Gen Worldwide Limited,<br><br>Defendant. | No. 1:22-cv-01367<br><br>OPINION |

**APPEARANCES**:

Francis P. Maneri
DILWORTH PAXSON, LLP
1500 Market Street
Suite 3500E
Philadelphia, PA 19102-2101

   *On behalf of Plaintiffs*.

Robert Finch
238 West Lake Boulevard
Mahopac, NY 10541

   *Pro Se Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on a motion for partial summary judgment as to liability by Plaintiffs, David Wash ("Wash") and Zodiac Insurance Services, Inc. ("Zodiac Inc.") (collectively, "Plaintiffs"). (ECF No. 47). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment as to liability only is **GRANTED**.

**BACKGROUND**[1]

**A. Sale of Zodiac**

This matter arises out of a 2018 transaction between Plaintiffs and AFL Insurance Brokers Limited ("AFL"). (Pla. SOMF, ECF No. 47-2, ¶ 18). In 2011, Wash founded Zodiac Inc., a Delaware corporation, which specialized in professional, entertainment, and event insurance as an insurer, broker, and Lloyds of London cover holder. (Pla. SOMF, ECF No. 47-2, ¶¶ 1–2). Wash was Zodiac Inc.'s sole shareholder. (Pla. SOMF, ECF No. 47-2, ¶ 1). In 2017, Zodiac Inc. began looking for a merger partner. (Pla. SOMF, ECF No.47-2, ¶ 3). Plaintiffs were introduced to Defendant Robert Finch ("Defendant" or "Finch"), who was a shareholder, officer, and director of AFL, a United Kingdom Limited Company based in London, which provided insurance brokerage, reinsurance, risk management, and surety services. (Pla. SOMF, ECF No. 47-2, ¶ 4). In September 2017, prior to the introduction, Next Generation Holdings Limited ("NGHL"), an entity based in London, purchased a majority interest in AFL. (Pla. SOMF, ECF No. 47-2, ¶ 5).

---

[1] The facts set forth herein are undisputed unless otherwise noted. Further, pursuant to Federal Rule of Civil Procedure 56(c)(1), a non-moving party must respond to each statement of material fact by admitting or denying the statement and, when denying, the party must cite to specific evidence in the record to support such a denial. Here, pro se Defendant filed a response and admitted the majority of Plaintiff's Statement of Material Facts. (ECF No. 48). However, to the extent Defendant denied any statements, he failed to cite to the record or point to any evidence to support such denials. Thus, they are deemed admitted for purposes of this motion.

As director of AFL, Finch was responsible for keeping accounting records and safeguarding assets. (Pla. SOMF, ECF No. 47-2, ¶ 6). Plaintiffs allege that they relied on AFL's year-end financial statements for the years 2017 and prior, in determining whether to sell to AFL, (Pla. SOMF, ECF No. 47-2, ¶ 7), though Defendant maintains AFL's records were irrelevant to the transaction given NGHL's purchase of AFL. (Def. Responses to Pla. SOMF, ECF No. 48, ¶ 7). Nevertheless, Finch had signed AFL's 2017 year-end financial statement, which was made public in April 2018. (Pla. SOMF, ECF No. 47-2, ¶ 9). The 2017 financial statement, as well as the prior statements, states: "Under law the directors must not approve the financial statements unless they are satisfied that they give a true and fair view of the state of affairs for the company for that period . . . ." (Pla. SOMF, ECF No. 47-2, ¶ 10).

To facilitate Zodiac Inc.'s sale, Zodiac Insurance Services LLC ("Zodiac LLC") was formed as a limited liability company in July 2018, with Zodiac Inc. being the LLC's sole member. (Pla. SOMF, ECF No. 47-2, ¶ 13). To further facilitate the sale, AFL USA, Inc. ("AFL USA") was incorporated in Delaware on August 20, 2018. (Pla. SOMF, ECF No. 47-2, ¶ 14). AFL USA was a subsidiary of AFLIB2, Ltd. ("AFLIB2"), which was initially wholly owned by NGHL. (Pla. SOMF, ECF No. 47-2, ¶ 15). In February 2019, Next Gen Worldwide Limited ("NGW") incorporated and became the parent of AFLIB2. (Pla. SOMF, ECF No. 47-2, ¶ 15).

A Contribution Agreement between Zodiac Inc. and Zodiac LLC specifically stated Zodiac Inc. and AFLIB2 had entered into discussions "to combine their know-how and, business insurance acumen, connections and relationships, in order to grow [Zodiac Ins.'s] insurance business and to expand its business in the marketplace." (Pla. SOMF, ECF No. 47-2, ¶ 16, Ex. B). The Contribution Agreement also recognized that Zodiac Inc. had created Zodiac LLC to "facilitate the joint venture" between AFLIB2 and Zodiac Inc. (Pla. SOMF, ECF No. 47-2, ¶ 17).

On September 1, 2018, Zodiac Inc. sold sixty percent of its membership interest to AFL USA, such that AFL USA owned sixty percent of Zodiac LLC and Zodiac Inc. owned forty percent of Zodiac LLC. (Pla. SOMF, ECF No. 47-2, ¶ 18). After the sale, Wash continued as the sole shareholder of Zodiac Inc. (Pla. SOMF, ECF No. 47-2, ¶ 19). Wash contributed $50,000 to the buyer's legal fees, which he paid to AFL. (Pla. SOMF, ECF No. 47-2, ¶ 20). Wash also executed an employment agreement with Zodiac LLC, which contained a five-year restrictive covenant. (Pla. SOMF, ECF No. 47-2, ¶ 26). Wash alleges he also agreed to a reduced fixed salary. (Pla. SOMF, ECF No. 47-2. ¶ 27).

Following the sale, both AFL and Zodiac LLC issued press releases where AFL announced, "the acquisition of a majority interest in New Jersey USA based" Zodiac LLC. (Pla. SOMF, ECF No. 47-2, ¶ 22). Finch was the officer and director of Zodiac LLC, AFL, and AFLIB2 at all relevant times. (Pla. SOMF, ECF No. 47-2, ¶ 25). The sale also required that all future Zodiac LLC business with Lloyds of London flow through AFL. (Pla. SOMF, ECF No. 47-2, ¶ 21).

On April 13, 2021, AFL changed its name to Ambon Brokers Limited ("Ambon"). (Pla. SOMF, ECF No. 47-2, ¶ 30). Thereafter, on April 27, 2021, the UK Companies House published a Director's Report and Financial Statements for AFL, for accounting period ending on December 31, 2019 ("the Director's Report"). (Pla. SOMF, ECF No. 47-2, ¶¶ 31–32). The Director's Report stated:

> Through forensic clearing down of ageing balances and enhancements to operational data processes, a discrepancy between insurance creditors and fiduciary cash was identified by the new management team. Following a detailed examination by leading independent specialist accountants, significant historic accounting irregularities were uncovered that had led to an underlying build-up of unsupported balances in the fiduciary accounts for many years to 2018. The quantum of these balances totaling £ 3,755,550 (converted sterling).[2]

---

[2] Plaintiffs represent that the US dollar value of this amount is $5,009,000. (Pla. SOMF, ECF No. 47-2, ¶ 34).

(Pla. SOMF, ECF No. 47-2, ¶ 32, Ex. I at 1). Thereafter, in 2021, both Ambon and Zodiac LLC were sold. (Pla. SOMF, ECF No. 47-2, ¶¶ 36–37). As part of the sale, Wash entered into another five-year restrictive covenant. (Pla. SOMF, ECF No. 47-2, ¶ 38).

### B. United Kingdom Action

In August 2020, NGHL and Ambon filed suit in the High Court of Justice in London ("the High Court") against Finch, his father, Alec Finch, and former Chief Financial Officer, Keely Dalfen. (Pla. SOMF, ECF No. 47-2, ¶ 39). The suit alleged dishonest and fraudulent breach of warranty, fraudulent misrepresentation, breach of duties owed to AFL, and unlawful means of conspiracy. (Pla. SOMF, ECF No. 47-13, Ex. K). NGHL argued that the Finches and Dalfen had painted a false picture of AFL's financial position before NGHL purchased AFL in September 2017 by overstating the sums owed to AFL and contrary to the company accounts, there was a £ 3,755,550 size hole in AFL's client money account. (*Id.*).

The High Court conducted a three-week bench trial in June 2023. (Pla. SOMF, ECF No. 472, ¶ 41). Following the trial, the High Court found Finch and his father, Alec Finch, liable for dishonest and fraudulent breach of warranty, fraudulent misrepresentation, breach of fiduciary duty, and tortious conspiracy. (Pla. SOMF, ECF No. 47-2, ¶ 42). Specifically, the High Court found that there was a "very significant deficit in the client money account at the time of the share sale" which was known to the Finches. (*Id.*). The High Court also found that the Finches made fraudulent misrepresentations about AFL's debts by stating that there were outstanding debts that they knew were not actually owed. (*Id.*). Additionally, the High Court found that the defendants "acted together in causing AFL to trade at a loss and giving a false picture to NGHL of AFL's finances so as to bring about the share sales, knowing the inevitable consequences." (*Id.*).

On November 17, 2023, the High Court denied the Finches' request for permission to appeal the judgment. (Pla. SOMF, ECF No. 47-2, ¶ 54). On December 21, 2023, the UK Court of Appeal, Civil Division, denied five of the six challenges the Finches raised. (Pla. Supplemental Brief, ECF No. 51 at 2, Ex. 1). The first five grounds challenged the factual findings that there was a "client money hole of £ 3,755,550" and that the Finches knew of the "fictitious accruals." (*Id.*). On these grounds, the UK Court of Appeal found that there was "no real prospect of the appellants persuading this Court that the finding to which grounds 1–5 relate should be overturned." (*Id.*). However, the UK Court of Appeal did find that the sixth ground, which Plaintiffs state involves an unrelated damages issue which is immaterial to this action, could proceed. (*Id.*).

## I.     **PROCEDURAL HISTORY**

On March 14, 2022, Plaintiffs filed a Complaint against Finch, both individually and in his capacity as a Director of Zodiac LLC, AFL, AFL USA, AFLIB2, and NGW. (ECF No. 1). Plaintiffs filed an Amended Complaint on March 22, 2022, alleging fraud (Count One), negligence (Count Two), and a derivative claim on behalf of Zodiac LLC (Count Three). (ECF No. 5). On December 27, 2022, the Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing Count Two to the extent it raised a general negligence claim. (ECF No. 17).

On February 8, 2023, the Court entered a scheduling order, with factual discovery expiring on October 10, 2023. (ECF No. 24). However, on August 2, 2023, the Court administratively terminated this action pending a decision in the UK litigation based on the parties' representation that the UK litigation would influence the outcome of this litigation. (ECF No. 38). On October 4, 2023, after being advised of the conclusion of the UK litigation, the Court reopened the case. (ECF No. 44). Since the case was stayed during the fact discovery period and since the Plaintiffs do not set forth any discovery which took place in their Motion, it is unclear what, if any discovery has

taken place to date.

On December 8, 2023, Plaintiffs filed the present Motion for Partial Summary Judgment as to liability. (ECF No. 47). Defendant filed opposition on December 15, 2023. (ECF No. 48). Plaintiffs filed a reply on December 26, 2023. (ECF No. 49). Thereafter, on January 5, 2024, Plaintiffs filed a supplemental reply as to the status of the UK appeal, (ECF No. 51), to which Defendant responded on January 22, 2024, (ECF No. 54).[3]

On May 15, 2024, Plaintiffs filed a Motion for Partial Summary Judgment as to damages. (ECF No. 58). Defendant filed opposition on June 13, 2024, (ECF No. 60), to which Plaintiffs replied on July 1, 2024, (ECF No. 62). That Motion remains pending.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine

---

[3] Though sur replies are not permitted without leave of court, *see* Local Rule 7.1(d)(6), the information regarding the UK appeal is relevant to the Motion and thus, will be considered.

issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

1. Collateral Estoppel

Plaintiffs' argument rests solely on the preclusive effect of the outcome of the UK litigation. Plaintiffs argue that because the High Court found Defendant liable for fraud, misrepresentation, and breach of fiduciary duty based on Defendant misrepresenting AFL's financial condition, in part, Defendant is precluded from denying the key elements in Plaintiffs' suit here. (Pla. Br., ECF No. 47-1 at 2). Conversely, Defendant maintains that the UK judgment has nothing to do with this case because Wash is not a shareholder in any of the entities involved in the UK litigation. (Def. Br., ECF No. 48 at 2). Defendant also argues that the UK judgment is

irrelevant because AFL was not the purchaser of Zodiac Inc. as AFL was a subsidiary of NGHL at the time of the 2018 transaction. (*Id.*).

The doctrine of collateral estoppel prevents a party from relitigating issues that have already been decided in prior lawsuits. *Peterson v. Holmes*, No. 11-2594, 2017 WL 1653949, at *4 (D.N.J. May 2, 2017) (citing *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997)). "Collateral estoppel exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to relitigate the same issues in multiple lawsuits." *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). In New Jersey,[4] a party seeking to invoke the doctrine must show that: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Id.* (citation omitted). There is also a fairness component in applying collateral estoppel as it is an equitable doctrine. *See Allen v. V & A Bros.*, 26 A.3d 430, 444 (N.J. 2011).

However, as this action involves a foreign country's judgment, the Court must first determine whether it will apply the doctrine of collateral estoppel to the UK judgment. "Generally, preclusion is based on the Full Faith and Credit clause, U.S. Const. art. IV, § 1, or on 28 U.S.C. § 1738 (1994); however, a foreign country's judgments are not subject to the Full Faith and Credit

---

[4] Because this Court has diversity jurisdiction over this matter, it must apply New Jersey law. *See Lithuanian Com. Corp. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 458 (D.N.J. 2002) ("[A] federal court exercising diversity jurisdiction . . . [is] bound to apply the relevant New Jersey law[.]").

9

clause or § 1738 . . . ." *Pony Express Recs., Inc. v. Springsteen*, 163 F. Supp. 2d 465, 471–72 (D.N.J. 2001) (citation omitted). Yet, courts can apply the doctrine to judgments of foreign countries based on the principles of comity. *Id.*; *see also Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1186 (N.J. App. Div. 2011); *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994) (quoting *Remington Rand v. Business Sys. Inc.,* 830 F.2d 1260, 1266 (3d Cir.1987) ("In general, '[u]nder the principle of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation.'")).

In *Hilton v. Guyot,* 159 *U.S.* 113, 163–64 (1895), the United States Supreme Court explained that in international relations

> "[c]omity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

The *Hilton* court found that "if the foreign judgment was entered by a competent court, having both personal and subject-matter jurisdiction, if the judgment was brought upon due allegations and proofs, giving the parties opportunity to defend against the claims, and if the judgment is entered in a clear and formal record," then "it should be held conclusive upon the merits tried in the foreign court, unless there is a special ground on which to impeach the judgment." *Pony Express Recs., Inc.*, 163 F. Supp. 2d at 471–72 9 (citing *Hilton*, 159 U.S. at 141); *Bondi*, 32 A.3d at 1186.

Here, the UK litigation and judgment satisfies all the *Hilton* requirements. The UK litigation took place in the High Court of Justice, Chancery Division in which the UK Court had jurisdiction to adjudicate the fraud claims and had personal jurisdiction over the parties, Finch, NGHL, and Ambon (formerly AFL). And no party disputes any of these issues. Further, given the

three-week bench trial, in which Finch testified, and the High Court's sixty-two-page opinion, there is no doubt that the Court amply considered the claims. In short, there is nothing that impeaches the High Court's decision. As such, as a threshold matter, this Court recognizes the UK decision as "conclusive upon the merits" for purposes of applying the doctrine of collateral estoppel. *See, e.g.*, *Pony Express Recs., Inc.*, 163 F. Supp. 2d at 472–73.

Further, there is no question that the UK Court issued a final judgment on the merits[5] and that Defendant was a party in the UK litigation, thereby satisfying the third and fifth elements. Defendant's argument that Plaintiff was not a party in the UK litigation is immaterial as estoppel under New Jersey law only requires that the party *against whom* the doctrine is asserted was a party in the earlier proceeding. *See Peterson*, 2017 WL 1653949, at *4 (stating the final requirement for collateral estoppel is that "the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding").

As for the issues presented in the prior and current litigation, the core issue in the UK litigation was whether Finch, and the other defendants named in the UK litigation, committed fraud against NGHL and Ambon (formerly known as AFL) because (1) false income accruals were recorded in AFL's account, overstating its income and creating the false impression that AFL was profitable, (2) the false accruals were carried into AFL's balance sheet, making it appear to have positive net assets when in fact its net assets were negative, and (3) AFL's client money calculations were falsified in order to make it appear that AFL had surplus funds in its client trust

---

[5] New Jersey considers a judgment final even if pending on appeal. *Bondi*, 32 A.3d at 1187. And though the UK decision is on appeal, as previously noted, the UK Court of Appeal permitted Defendant's appeal *only* as to an unrelated damages issue. (Pla. Reply, ECF No. 51, Ex. A). The UK Court of Appeal denied permission for Defendant to appeal the factual and legal findings, which are relevant here. (*Id.*).

accounts each month, rather than the reality which was that it had a substantial shortfall each month. (Ex. K, Def. Br., ECF No. 47-13 at 8). The legal bases for the fraud claim were, as described by the UK Court, "dishonest and fraudulent breach of warranty; fraudulent misrepresentation; breach of duties owed to AFL; and unlawful means conspiracy." (*Id.*). Here, the core issues underlying Plaintiffs' claims are whether Finch committed fraud, made negligent misrepresentations, and breached his fiduciary duty to Plaintiffs by failing to disclose AFL's true financial health during the sale of Zodiac Inc. though he was obviously aware of AFL's false financial reporting, given his participation in the fraudulent scheme at AFL. Thus, the core issues at the heart of both the UK litigation and this litigation are the same. Moreover, these issues were actually litigated over the three-week-long bench trial and were essential to the Court's finding that Finch had committed fraud in the UK litigation.

As such, the following findings by the UK Court must be given preclusive effect in this case: (1) that Finch engaged in a years' long fraud at AFL by depleting client trust money and misrepresenting AFL's financial health; (2) Finch was aware of the "hole" in the client trust account, the misuse of the client trust money, and the false financial reporting; and (3) Finch committed fraud and breached his fiduciary duty owed to AFL. (Pla. Br., ECF No. 47-1 at 10). Finch is estopped from arguing otherwise. However, the determination that these findings of the Court in the UK litigation are entitled to preclusive effect does not automatically equate to Plaintiffs' entitlement to summary judgment on its claims in this litigation since the claims and parties were not identical. Indeed, while "[c]laim preclusion prevents the relitigation of identical cases . . . issue preclusion prevents the relitigation of *discrete issues*." *Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017). Thus, while the UK findings may have preclusive effect as to *discrete issues* within the claims in this case, they may not wholly establish

Plaintiffs' claims. As such, the Court must now consider each of Plaintiffs' claims and determine whether, after giving such preclusive effect to the UK findings, Plaintiffs are entitled to summary judgment.

### 2. Fraud and Negligent Misrepresentation[6]

To establish a claim for fraud, Plaintiffs must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013) (quoting *Joe Hand Promotions, Inc. v. Mills,* 567 F. Supp. 2d 719, 727 (D.N.J. 2008)). For negligent misrepresentation, a plaintiff must show: "(1) an incorrect statement, (2) negligently made and (3) justifiably relied on, [which] (4) may be the basis for recovery of damages." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 615 (D.N.J. 2013). The primary difference between intentional fraud and negligent misrepresentation is the scienter element. *See Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000) ("Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud."). "A negligent misrepresentation claim may also be based on an omission where plaintiff adequately pleads a duty to disclose." *S. Broward*

---

[6] Though not briefed by either party, the Court notes that personal liability for Defendant in this litigation appears appropriate given the fraud described and found by the Court in the UK litigation. *See Lyon v. Barrett,* 89 N.J. 294, 300, 445 A.2d 1153 (1982) ("In the absence of fraud or injustice, courts generally will not pierce the corporate veil to impose liability on the corporate principals."). "Under New Jersey law, personal liability will only be imposed if it is demonstrated that the officer or director disregarded the corporate form and 'utilize[d] the corporation as a vehicle for committing equitable or legal fraud.'" *Rowen Petroleum Properties, LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012) (quoting *Marascio v. Campanella,* 689 A.2d 852, 858 (N.J. 1997)).

*Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007).

As already determined by the UK litigation, prior to the sale and during the sale of Zodiac Inc., Finch misrepresented the financial health of AFL. Wash states that he relied on the 2017 financial report of AFL, which the UK Court deemed to have been falsified, in determining whether to sell Zodiac Inc. to AFL. (Pla. SOMF, ECF No. 47-2, ¶ 7; Wash Decl., ECF No. 47-15). Defendant's contention that AFL's financial information was of no relevance because AFL's parent company NGHL was the entity that purchased Zodiac is unavailing. (Def. Br., ECF No. 48 at 3). First, it was AFL USA who was the buyer of Zodiac Inc. as per the membership interest purchase agreement, which was signed by Finch on behalf of AFL USA. (Ex. D, Pla. Br., ECF No. 47-6). Additionally, Defendant himself admits that "AFL and Zodiac were positioned as symbiotic sister companies." (Def. Res. to Pla. SOMF, ECF No. 48, ¶ 12). Defendant also admits that Zodiac Inc. was portrayed in the industry as a subsidiary of AFL. (Def. Res. to Pla. SOMF, ECF No. 48, ¶ 22; Pla. SOMF, ECF No. 47-2, ¶ 22). Moreover, Defendant also admits that he was, at all relevant times, the director of Zodiac LLC, AFL, and AFLIB2. (Pla. SOMF, ECF No. 47-2, ¶ 25). Defendant's attempt to distance himself from the transaction is belied by these admissions. As such, the findings in the UK litigation preclude Defendant from arguing in this litigation that he did not make a material misrepresentation that he knew to be false regarding AFL's financial health during the negotiations for the 2018 transaction.

And while determining whether a plaintiff's reliance was "reasonable" or "justifiable" is typically a question of fact for the jury, *see Angrisani v. Capital Access Network, Inc.,* 175 F. App'x 554, 557 (3d Cir.2006), in this case no reasonable factfinder could find that Plaintiffs would have entered into a business deal with Defendant, or any entity affiliated with Defendant, had they

14

known of the true financial health of AFL. Moreover, there is no material dispute given Defendant's admissions outlined above that the misrepresentation, was intended to be, and in fact was, relied on, by Plaintiffs in choosing to merge with Defendant. Plaintiffs state "[d]uring the course of Zodiac Inc.'s due diligence to determine whether to sell to AFL, Zodiac Inc. reviewed and relied upon AFL's year-end financial statements for the years 2017 and prior thereto, which were publicly posted on the United Kingdom's government website known as UK Companies House;" a statement certified as true by Wash in his declaration. (Pla. SOMF, ECF No. 47-2, ¶ 7; Wash Decl. ECF No. 47-15). Defendant does not deny that Plaintiffs reviewed AFL's financial reports. In fact, he states, "Plaintiffs may have reviewed AFL's financials[.]" (Def. Res. to Pla. SOMF, ECF No. 48, ¶ 7). Instead, Defendant just disputes the relevance of these records to the 2018 transaction. There is, thus, no material dispute as to Plaintiffs' reliance.

Turning to the final prong, to establish the damages prong for fraud and negligent misrepresentation, the misrepresentations must be the proximate cause of the damages. *See McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 438 (3d Cir. 2007) ("[P]roximate causation is a required element of both common law fraud and negligent misrepresentation under New Jersey law."). Here, too, there is no dispute that Defendant's misrepresentations brought about the 2018 sale and Wash entering into two separate restrictive covenant agreements.

For all of these reasons, Plaintiffs have established all the facts necessary to prevail on their fraud and negligent misrepresentation claims. As such, the Court grants Plaintiffs' Motion for Summary Judgment as to Liability on Counts One and Two. Because Plaintiff Wash has filed a separate Motion for Partial Summary Judgment as to Damages, (ECF No. 58), the Court will address what, if any, damages Plaintiff Wash alleges and whether he is entitled to summary judgment in that Motion.

3. Breach of Fiduciary Duty

To establish "a claim for breach of fiduciary duty, a plaintiff must [show] the following: (1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Gen. Motors LLC v. Ashton*, No. 20-12659, 2021 WL 2549498, at *9 (D.N.J. June 22, 2021).

Defendant as director of, Zodiac LLC, a limited liability company, owed a fiduciary duty to Zodiac Inc., as a minority member of Zodiac LLC. *See North Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176, 182 (3d Cir. 2013). The UK litigation findings preclude Defendant from maintaining that he did not breach his duty to Zodiac Inc. by failing to disclose the financial health of AFL, which became linked with Zodiac LLC by virtue of the 2018 transaction. That much is clear. Thus, on these undisputed facts, Zodiac Inc. establishes liability on the breach of fiduciary duty claim and thus are entitled to summary judgment as to liability only on Count Three.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment as to Liability is **GRANTED**.

**CHRISTINE P. O'HEARN**
**United States District Judge**